UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
|  | : |  |
| In re: | : |  |
|  | : | Case No.: 02- 43420 (MG) |
| MARC S. GARDNER, | : | Chapter 7 |
|  | : |  |
| Debtor | : |  |

-------------------------------------------------------x
|  | : |  |
| PEREIRA, | : |  |
| Plaintiff, | : | Adv. Pro. No.: 04-02970 (MG) |
|  | : |  |
| v. | : |  |
|  | : |  |
| GARDNER, | : |  |
| Defendant. | : |  |

-------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER AFTER TRIAL DENYING
DISCHARGE PURSUANT TO §727 OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S :*

DREIER, LLP
*Counsel for the Plaintiff*
499 Park Avenue
New York, New York 10022
By:     John P. Campo
        Mark C. Haut

WAYNE M. GREENWALD, ESQ.
*Counsel for the Defendant*
99 Park Avenue
New York, NY 10016
By:     Wayne M. Greenwald

**MARTIN GLENN**
**United States Bankruptcy Judge**

John S. Pereira, as chapter 7 trustee ("Trustee") of the estate of Marc S. Gardner

("Gardner," "Debtor" or "Defendant"), filed an adversary complaint against Gardner seeking to

deny Gardner a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A),

(a)(4)(D), and (a)(5).  (ECF Doc. # 1.)[1]  The Debtor denied the material allegations of the

complaint.  (ECF Doc. # 4.)  The case was originally assigned to Judge Gropper, but it was

transferred to me in April 2007.  A trial on the merits was held on December 11, 2007.

Thereafter, both sides submitted post-trial proposed findings of fact and conclusions of law.

(ECF Doc. # 14, 15, 17, 18.)  The matter was fully submitted on February 1, 2008.  Under § 727,

an adverse finding against Gardner under any subsection is sufficient to deny him a discharge.

As a result, for the reasons stated below, the Debtor's discharge is denied.  This opinion includes

the Court's findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52, made

applicable to adversary proceedings by FED. R. BANKR. P. 7052.  Three witnesses testified

during the trial: John Pereira, the Trustee; John Triggs, the receiver appointed by the District

Court following the trial in an earlier civil case; and Marc Gardner, the Debtor.  On the whole,

based on my opportunity to see and hear Gardner's testimony, I found his testimony completely

lacking in credibility.  On the other hand, the testimony of Pereira and Triggs was credible, and

to the extent there were any discrepancies between Gardner's testimony, on the one hand, and

Pereira's and Trigg's testimony, on the other hand, I credit the latter.

---

[1] Unless otherwise noted, all citations to the docket are to the underlying adversarial proceeding, case number 04-02970.

## BACKGROUND

The background of this case has been set forth in prior opinions in the main case and in several adversary proceedings.  As a result, only a brief overview of the facts relevant to the trial and decision will be repeated here.

The Debtor is a graduate of Brooklyn College with a degree in economics.  He was a designer/marketer and a merchandiser/salesman of women's apparel for approximately 30 years operating either as an individual or through one of his four wholly owned companies: Queenie, Ltd. ("Queenie"), MG Sales, Inc. ("MG"), Cinq Ltd ("Cinq"), and Jaipur, Inc. ("Jaipur").  Following an October 2001 jury trial in the Southern District of New York before Judge Naomi Buchwald, a verdict was entered against Gardner individually and against his wholly owned company, Queenie, in favor of Nygard for copyright infringement.  (Case No. 02-43420, ECF Doc. # 31.)  The verdict awarded punitive damages against Gardner individually for $500,000.00 and against the company for $250,000.00.  *Id.*  Judge Buchwald stated that Gardner had essentially perpetrated a fraud on the copyright office and attempted to do the same in the trial.  *Id.*  After the judgment was entered, a receiver was appointed to deal with Gardner's lack of cooperation and actions, which jeopardized the underlying assets available to satisfy the Nygard judgment.  *Id.*  The Court authorized the receiver to sell Gardner's property and to deposit the proceeds from the sale after payment of taxes and fees to the benefit of Gardner's creditors.  *Id.*  The matter was then referred to Magistrate Judge Douglas Eaton, who found that despite the appointment of the receiver Gardner continued to violate court orders by obtaining large amounts of income and using them to make payments and transfers without the knowledge of the receiver.  *Id.*  For example, after the jury verdict in favor of Nygard, Gardner contacted his former spouse and told her to "protect her interests."  *Id.*  Gardner then signed a confession of judgment in favor

of his former wife, which she entered in the amount of $7.5 million.  *Id.*  In the same period,

Gardner also transferred an interest in three cars to his mother-in-law and mortgaged his interest

in a condominium he owned at 630 First Avenue, Units 31C and 31D, for the sum of $225,000.

Prior to Gardner's bankruptcy filing, the receiver had also secured court approval of the sale of

Gardner's condominium.  *Id.*  Judge Eaton ordered Gardner to vacate the condominium so that

the receiver could close the sale transaction.  The buyers requested that their deposit be returned

if the sale was not consummated quickly.  *Id.*  Gardner sought relief under chapter 11 the day the

order to vacate the condominium was entered thereby stalling the sale of the property.  *Id.*  The

potential buyers ultimately backed out of the purchase due to the delay.

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

as an individual on November 14, 2002.  Judge Gropper found that the Debtor's misconduct

continued post petition and necessitated conversion of the case from chapter 11 to chapter 7.

(Case No. 02-43420, ECF Doc. # 31.)  Among other things, Judge Gropper found that after the

chapter 11 filing the receiver turned over to the Debtor all of the checkbooks and accounts that

were in his possession.  *Id.* at 6.  The Debtor failed to turn over these items to the Trustee.

Despite the Debtor's claims to the contrary, I find these facts to be true.

The Debtor's actions at issue in this case include the bankruptcy schedules that he filed

and his interaction with the chapter 7 trustee appointed after the case was converted to chapter 7.

Judge Gropper previously found that the numerous contested matters and adversary proceedings

throughout the bankruptcy case were necessitated by the Trustee's need to secure assets for the

estate that Gardner had transferred or otherwise removed prior to Gardner's bankruptcy filing.

The Debtor's Schedule A listed the Debtor's Real Property including the Debtor's

condominium and three timeshares.  *Id.*  The timeshares listed were one week prime and one

week floating at the Crane in Barbados, and one week prime and one week not prime at Canyon Ranch Arizona. *Id.* The combined current market value listed for these timeshares was $41,000.00. *Id.* None of the timeshares were listed as jointly held. None of the Debtor's wholly owned corporations were listed with any value. *Id.* The Debtor's Schedule B, Personal Property, lists a 100% interest in all four wholly owned companies at a current market value of $ 0.00. In the Debtor's § 341(a) meeting the Debtor affirmed that the corporations had no assets. The schedules list the amount of the secured claims against these properties at $7,600,000.00. *Id.* This same figure also appears in the Debtor's Schedule D as the amount of the judgment held against the Debtor by his former spouse that was entered shortly after the Nygard judgment against him. *Id.* The schedule also lists jewelry held both jointly and singly at a current market value of $73,500.00. *Id.*

During the administration of the estate, the Trustee discovered that Gardner owned more timeshares than were listed in the Debtor's schedules. The Trustee found a total of nine weeks of the Barbados timeshares that were not listed in the Debtor's schedules. The Trustee ultimately sold these timeshares for $196,000.00. Gardner testified during the trial that he disclosed the existence of these additional timeshares to the receiver, Triggs; but Triggs testified at trial that the Debtor did not disclose these assets to him. Gardner's testimony was not credible. Trigg's testimony was credible and is found as a fact to be true.

During the chapter 11 case, Gardner also paid for travel, entertainment and dining expenses, including two trips to Barbados, an extended stay in Florida, a trip to Belgium and Paris, and visits to Turkish and Russian Baths, from his debtor-in-possession account.

By stipulation and orders of the Court, the Trustee's time to object to a discharge was extended to April 20, 2004. On April 20, 2004, the chapter 7 trustee filed the adversary

complaint objecting to Gardner's discharge pursuant to Bankruptcy Code §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5).  In his post-trial submissions, the Trustee also requested that the pleadings be conformed to the evidence, asserting that Gardner should also be denied a discharge under Bankruptcy Code § 727(a)(6).

The Trustee argues that the Debtor should be denied a discharge under §§ 727(a)(2) and (a)(4) because (i) the Debtor hid the existence of the additional timeshares and bank accounts by not listing them on his Schedules, (ii) failed to disclose these assets during his § 341(a) meeting, and (iii) falsely testified during the § 341(a) meeting that the corporations had no assets.  The Debtor testified at trial that the omission of the timeshares was because he was not sure whether the ownership of the additional timeshares was vested in his wife, the corporations or himself.  I specifically reject this testimony and conclude it was untrue.

The Trustee also argues that the Debtor should be denied a discharge under §§ 727(a)(2), (a)(4), and (a)(5) because the Debtor overstated the value of his assets in regards to jewelry included on Schedule B.  While the schedule listed the value of the jewelry at $73,500, after the Trustee finally obtained possession of the jewelry after bringing an adversary proceeding, the Trustee was only able to sell the jewelry for $22,500.  The Debtor contends that there was no misstatement in the value and that the Debtor believed the value listed in the schedule to be true. The Debtor argues that the Trustee discovered that some of the items of jewelry were forgeries and that is the reason for the difference in value because the Debtor believed the items to be genuine when he listed them in the schedules.  The Trustee argues that the more likely explanation is that the Debtor did not turn over the actual jewelry that he listed as having the $73,500 value; instead he substituted jewelry with substantially lower value.

The Trustee alleges that the Debtor should be denied a discharge under § 727(a)(3) because the Debtor failed to maintain and provide the Trustee with adequate books and records for the Trustee to ascertain the Debtor's financial condition. The Trustee testified about the lack of books and records supplied by the Debtor. The Debtor testified that his former accountant and the receiver (to whom the Debtor claims he supplied the records before his bankruptcy filing) retained many of his records and would not turn them over to the Debtor. Trigg's trial testimony disputed this assertion. Triggs testified that Gardner provided him only limited records that did not assist in locating Gardner's assets. Again, Gardner's testimony was not credible; Pereira's and Trigg's testimony was credible. In addition, the Debtor testified that he turned over to the Trustee four or five cartons of documents, but he provided no proof of delivery. Pereira testified that Gardner turned over no bank account records, and no records of Cinq, Ltd., the only one of Gardner's companies that was active at the time of Gardner's bankruptcy filing. Gardner testified at his § 341(a) meeting "he had no way of knowing the gross sales or income of Cinq, Ltd. for 2003." Through his own investigation, the Trustee discovered that Gardner and his companies in fact had bank accounts. Gardner's excuses for failing to disclose the existence of the accounts, and failing to retain or turn over the account records to the Trustee, were not credible.

Lastly, the Trustee argues that Gardner admitted his failure to comply with a Court order issued by Judge Gropper. On March 14, 2002, Judge Gropper ordered that the "Debtor shall file (i) a schedule of unpaid debts incurred after the commencement of the Chapter 11 case within 15 days of the date of this order, and (ii) a final report within 30 days of the date of this order pursuant to bankruptcy Rule 1019(5)." *See* Joint Exhibit 3 at 14. The Debtor stipulated that he never filed the list of unpaid chapter 11 obligations or a final chapter 11 report. *See* Stipulated

Fact ¶ 18.  While not originally included in the adversary complaint, the Trustee argues that the

pleadings should be amended to conform to the proof since the facts were included in the pretrial

stipulation.  *See* FED. R. CIV. P. 15(b), made applicable to an adversary proceeding by FED. R.

BANKR. P. 7105.

The court will address each of the Trustee's arguments for denying a discharge in turn.

## DISCUSSION

### A.    Overview of Bankruptcy Code § 727

The Bankruptcy Code states that the court *shall* discharge a debtor unless one of the

enumerated grounds for denial of discharge is proven.  11 U.S.C. § 727.  Generally, a denial of

discharge pursuant to § 727 is characterized as an extreme remedy that "must be construed

strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt."

*In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (citing *State Bank of India v. Chalasani (In re

Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotations omitted)).  The burden of

persuasion rests with the objecting party to show by a preponderance of the evidence that the

Debtor is not entitled to discharge.  *In re Zembko*, 367 B.R. 253, 254 (Bankr. D. Conn. 2007); *In

re Jacobowitz*, 296 B.R. 666 (Bankr. S.D.N.Y. 2003); *In re Wolfson*, 152 B.R. 830 (Bankr.

S.D.N.Y. 1993).

Under some subsections of § 727(a) courts have recognized a shifting burden of

production.  Subsections (a)(3), (a)(4)(A), (a)(5), and (a)(6) all include some shifting of the

burden of production.  Under § 727(a)(3), after the objecting party has established its prima facie

case by showing the records are insufficient "to ascertain the debtor's financial condition and

business transactions, then the burden of coming forward shifts to the debtor to produce

additional credible evidence to rebut the proof of insufficient records, or to justify the absence of

records." *In re Nemes*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005) (citing *Thaler v. Erdheim* (*In re Erdheim*), 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996) (internal quotations omitted)); *In re Jacobowitz*, 296 B.R. 666; *United States Fidelity & Guaranty v. Delancey (In re Delancey)*, 58 B.R. 762, 767-68 (Bankr.S.D.N.Y.1986). Under § 727(a)(4)(A), once the objecting creditor has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation. *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005) (holding that burden shifts when it reasonably appears that the oath is false); *In re Shah,* 2008 WL 117860, *11 (Bankr. E.D.N.Y. Jan. 10, 2008). Under § 727(a)(5), a prima facie case requires the plaintiff to produce some evidence of the disappearance of substantial assets. *In re Cacioli*, 463 F.3d at 238. Once this burden has been met, the debtor must explain the whereabouts of the assets and as long as such explanation is convincing and not rebutted, no documentary corroboration is needed. *Id.* Under § 727(a)(6), the ultimate burden of persuasion is on the objecting party but the burden of production will shift once the objecting party has shown a violation of a court order. *In re Beeber*, 239 B.R. 13, 30 (Bankr. E.D.N.Y. 1999). Shifting burdens of production, however, will not shift the ultimate burden of persuasion.

**B.    Bankruptcy Code § 727(a)(2)**

To establish a claim under § 727(a)(2) the objecting party must show that:

(i)   the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done;

(ii)  the act was done with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(iii) the act was that of the debtor or a duly authorized agent of the debtor;

(iv)the act complained of was done within the one year before the date of the filing of the

petition (unless the act operates as a continuing concealment).  In this case, the

Trustee did not allege that transfers were made within the one year period but more

generally that the Debtor concealed property with the intent to defraud the estate

within the year prior to bankruptcy and postpetition.

*See* 11 U.S.C. § 727(a)(2).  Discharge will be precluded under § 727(a)(2) if all of the above

prongs have been proven by a preponderance of the evidence.  *See Grogan v. Garner,* 498 U.S.

279, 290-91 (1991).  The statute applies to acts involving either concealments of debtor's

property or transfers of that property.  *In re Kontrick*, 295 F.3d 724, 735-37 (7th Cir.2002)

(quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993)) ("§ 727(a)(2)(A) [or (B)]

essentially 'consists of two components: an act (i.e., a transfer or a concealment of property) . . .

'").  By the unambiguous text of the statute, concealment alone is sufficient under this

subsection.  *Rosen v. Bezner*, 996 F.2d at 1532 ("What is critical under the concealment

provision of § 727(a) is whether there is a concealment of property, not whether there is

concealment of a transfer."); *see also Portnoy v. Marine Midland Bank (In re Portnoy)*, 201 B.R.

685, 694-95 (Bankr. S.D.N.Y. 1996) (stating that a failure to volunteer is inadequate for

concealment but concealment is evidenced when a debtor withholds knowledge or refuses to

divulge owed information because there is a "duty to tell" once a debtor begins to set forth the

facts surrounding a subject).  In addition, courts have recognized that the one-year requirement

associated with denial of discharge under this provision can be extended by the Continuing

Concealment Doctrine.  *In re Palermo*, 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007).

Fraudulent intent may be inferred by circumstantial evidence or inferences drawn from a

course of conduct.  *In re Handel*, 266 B.R. 585, 588-89 (Bankr. S.D.N.Y. 2001).  The badges of

-10-

fraud often cited as circumstantial evidence of intent are (i) lack or inadequacy of consideration, (ii) a family, friendship, or close associated relationship between the parties; (iii) the retention of position, benefit, or use of the property in question; (iv) the financial condition of the party sought to be charged both before and after the transaction in question; (v) the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency of suit by creditors; and (vi) the general chronology of the events and transaction. *Id.* at 589.

The Trustee argues that the Debtor should be denied a discharge based on the Debtor's failure to include in schedules or to disclose in verbal testimony the interests in property held by either himself or his companies that were later found in the course of the bankruptcy. The Trustee alleges that the Debtor engaged in conduct that qualifies as concealment within the meaning of Bankruptcy Code § 727(a)(2) because the Debtor (1) did not list the timeshares in Barbados on his schedules or disclose them in the 341(a) meeting and instead stated that the corporations had no assets, and (2) did not list bank accounts which may or may not have had a positive balance on his schedules. The Trustee supported these allegations with (i) copies of the Debtor's original schedules, which were never amended during the course of the bankruptcy, (ii) testimony from the Trustee and the former receiver, and (iii) prior opinions and findings of fact by Judge Gropper. The Trustee contends that the Debtor's intent was demonstrated in the Trustee's testimony regarding the Debtor's failure to cooperate throughout the bankruptcy case and the resulting need for the Trustee to file several adversary proceedings to recover estate assets. In addition, the Trustee offered the testimony of the former receiver, Triggs, and Judge Gropper's prior opinion, which discussed the numerous orders entered by Magistrate Judge

Eaton that the Debtor failed to comply with prior to the bankruptcy filing.  The Trustee argues

that all of these facts are indicative of fraud in the bankruptcy case.

The Debtor refutes these allegations and argues that the Trustee failed to identify

property of the Debtor's that was transferred or concealed within one year of the petition date.

The Debtor argued that while the additional timeshares had not been listed in his schedules, this

was an oversight due to their possible ownership by the corporations rather than by the Debtor

personally.  Despite this contention that the property likely belonged to his corporations, he

nevertheless claimed that his § 341(a) testimony that the corporations had no assets, and his

schedules valuing the corporations at $0, were not knowingly false or intended to conceal assets.

Gardner's contentions simply are not credible.

In evaluating the evidence, the Court finds and concludes that the Debtor's discharge

should be denied pursuant to § 727(a)(2).  The Trustee presented substantial, credible evidence.

The Court specifically finds that Gardner knowingly and intentionally concealed assets, in

particular the additional weeks of the Barbados timeshares, which the Trustee ultimately sold for

$196,000, by failing to identify these assets in his schedules and in his § 341(a) testimony.  The

Debtor's excuses as to his uncertainty about ownership and misunderstanding of the type of

corporate assets he was being questioned about is not believable given his level of education, his

experience in the business world of approximately thirty years, and his conduct throughout this

case and the prior District Court case before Judge Buchwald and Magistrate Judge Eaton.

Based on the entire trial record, including Gardner's testimony, the court also finds that Debtor's

concealment of assets began more than a year before the filing of the petition and continued until

the trial of this adversary proceeding.  A discharge is therefore denied based on the Debtor's

intentional concealment of assets in an attempt to defraud creditors under § 727(a)(2).

### C.    Bankruptcy Code § 727(a)(3)

The Trustee also argues that Debtor's discharge should be denied pursuant to § 727(a)(3).

A denial of discharge under this subsection requires proof of the following elements:

1. failure by the debtor to keep or preserve any recorded information, including books, documents, records and papers, *or*

2. an act of destruction, mutilation, falsification or concealment of any recorded information including books, documents, records and papers by the debtor or someone acting for the debtor

3. *and* that by failing to keep such books or records, or by destroying or concealing such records, it is impossible to ascertain the financial condition and material business transactions of the debtor.

As stated earlier, courts recognize a shifting burden of production under § 727(a)(3).  The trustee meets the initial burden by showing that the records are insufficient to ascertain the debtor's financial condition and business transactions, then the burden of production shifts to the debtor to produce additional credible evidence to rebut the proof of insufficient records, or to justify the absence of records.  *In re Nemes*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005).  Under this provision, there is no intent requirement; only a showing that the debtor failed to keep records that a reasonable person would maintain is necessary.  *In re Jacobowitz*, 309 B.R. at 440.  This is demonstrated not by a failure to maintain records in any special form, but by a failure to maintain records that make complete disclosure, which is a condition precedent to granting discharge, possible.  *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936).  In *Underhill*, the court found the failure to maintain checking account records and canceled checks tantamount to concealment when the debtor was engaged in complex securities transactions.  *Id.*  The factors considered to

determine the adequacy of records include the complexity and volume of the business; the amount of the debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor. *In re Frommann*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993).  After this initial burden is met the burden of production shifts and the Debtor must then justify the failure to keep records; an assertion that the records are sufficient or the statements that it was the normal practice of the debtor not to keep records are not sufficient. *Id.* at 117.  Despite the lack of a detailed requirement in terms of format or presentation of these records, even informal systems must be sufficient to provide a detailed financial condition without a trustee or judge being made to reconstruct the flow of assets and liabilities by sorting voluminous boxes or stacks of unorganized documents. *Id.* at 118.

The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records. *In re Jacobowitz*, 309 B.R. at 436 (citing *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992)).  Factors to be considered include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice. *Id.*

To support his claim for relief under this prong the Trustee relies on his testimony that the Debtor was uncooperative, that the Debtor failed to disclose the existence of the timeshares, and that the records the Debtor did produce were inadequate to understand or explain the

Debtor's business and financial condition.  The Trustee testified that Gardner failed to provide records sufficient to ascertain prior transactions, including the failure to provide bank statements and financial records from Cinq, Ltd., one of the Debtor's businesses for the year of 2003, insurance policies listed on the schedules, as well as account information for a debtor-in-possession bank account opened while the case was pending under chapter 11.  In addition, the Debtor failed to provide any information or records sufficient to show the ownership of the timeshares in question.

The Debtor contended that he did maintain records, but they were given to an accountant and to the receiver.  During the bankruptcy, the accountant refused to return Gardner's records due to lack of payment.  The Debtor offered no credible reason why the receiver had withheld his records, and indeed the receiver testified that he provided the Debtor's records to the Trustee. Gardner also testified that he provided numerous boxes of documents to the Trustee, and sought to obtain and turn over to the Trustee additional records by obtaining them from third parties through Rule 2004 examinations.  In addition, the Debtor argues that the Trustee's ability to discern the past financial transactions based on the records and information provided by the Debtor is demonstrated by the trustee's activities in the case, which involved motions to sell assets as well as adversary proceedings to unwind transactions.

The Court finds that the Debtor's arguments lack merit and specifically that his testimony lacked credibility.  The testimony of Pereira and Triggs, which the Court concludes was credible in all respects, satisfied the Trustee's burden of establishing that Gardner failed to keep and maintain, and thereafter failed to turn over to the Trustee, books and records required to explain the Debtor's financial transactions.  The Trustee demonstrated by his testimony that the discovery of the timeshares was not possible through the records provided by Gardner, and that

there was no means of determining ownership of the property from the records Gardner

provided.  The Debtor's argument that he provided the Trustee with boxes of materials, delivery

of which the Debtor had no proof or supporting evidence, and that his inability to provide more

detailed documents was based on the accountant's failure to surrender the documents is

unconvincing.  Given the Debtor's education, the complexity of the underlying business

operations with significant revenues, and the amount of debt held between the Debtor and his

corporations, the Debtor's justifications are inadequate.  Therefore, a discharge should be denied

based on § 727(a)(3).

### D.      Bankruptcy Code § 727(a)(4)

The Trustee also argues that the Debtor's discharge should be denied pursuant to §

727(a)(4).  The Trustee contends that he has met his burden of proof based on the same facts

underlying the prior causes of action.  These facts include (1) the Debtor's omission from his

schedules of the timeshares and bank accounts, (2) the alleged overvaluation of the jewelry in the

Debtor's Schedule B, (3) the Debtor's testimony at the trial that the reason the timeshares were

excluded from the Debtor's schedules was because the Debtor believed those to belong to his

corporations was false since he listed the value of the assets of those corporations at $0, and (4)

in the alternative, the concealment of the timeshares is sufficient in itself to preclude a discharge

under this subsection.  The Trustee asserts that the discharge should be denied pursuant to §

727(a)(4)(A) and (D).  A denial of discharge under each of these subsections will be discussed

separately.

### 1.    Denial of discharge under § 727(a)(4)(A)

A denial of discharge under § 727(a)(4)(A) requires the objecting party to prove the following elements:

(i)  material false oath

(ii) knowingly and fraudulently made

(iii)in connection with a bankruptcy case.

The false oaths recognized under this subsection could have been made in schedules, statement of affairs, or statements during examinations.  *FL Receivables Trust 2002 v. Fernandez (In re Fernandez)*, 2008 WL 268975 (Bankr. D. Conn. Jan. 29, 2008); 6 COLLIERS ON BANKRUPTCY ¶ 727.06-07 (15th ed. rev. 2008).  Omissions from the debtor's schedules are equally recognized as generating liability under this subsection.  *In re Handel*, 266 B.R. at 590.  Materiality is found if the false oath is related to the debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property.  6 COLLIERS ON BANKRUPTCY at ¶ 727.06-07.  Omissions are material if they impact the trustee's ability to discover other assets, fully investigate pre-bankruptcy dealings, financial condition, and discovery of preference or avoidance actions.  *Id.*  The analysis of what constitutes intent to defraud is the same as used in evaluating claims under § 727(a)(2).  *Id.*  Intent under this section can be found based on a reckless disregard, but will not be found in cases of ignorance or carelessness.  *Id.*  Once the objecting creditor has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanations.  *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005) (applying the shifting burden); *In re*

*Shah,* 2008 WL 117860, *11 (Bankr. E.D.N.Y. Jan. 10, 2008) (citing *In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000)).

In this case, as discussed earlier, the court need look no further than the omission of the ownership by the Debtor or his corporations of the additional timeshares with the intent to conceal these assets from his creditors discussed under § 727(a)(2), to find that the Debtor's discharge should similarly be denied under this section as well. The Debtor's concealment of the assets was a material omission that interfered with the Trustee's ability to discover assets for the estate, thereby meeting all the essential elements under this subsection to shift the burden to Gardner. The Debtor's response to the failure to disclose the timeshares was that he did not know whether he or a corporation owned the timeshares and that he did not disclose them in relation to the questioning regarding the corporate assets because he thought that meant copiers and computers. I have already concluded that Gardner's testimony was not credible. Therefore, a discharge should be denied based on § 727(a)(4)(A) as well.

### 2. Denial of discharge under § 727(a)(4)(D)

Denial of a discharge under § 727(a)(4)(D) requires that the objecting party prove the following elements:

(i) the debtor knowingly and fraudulently

(ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs

(iii) in or in connection with the debtor's own case.

Courts have interpreted this provision as imposing an affirmative duty on the Debtor to cooperate with the trustee "by providing all requested documents to the trustee for his review,

and failure to do so constitutes grounds for denial of discharge." *In re Erdheim*, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996) (holding that the debtor failed to fulfill the duty to cooperate when the trustee was forced to seek production from third parties of documents the debtor had available to him). Unlike § 727(a)(3), this subsection requires a finding of intent. The circumstantial evidence supporting the requisite intent to act "knowingly and fraudulently" was found to exist in other cases when the debtor's conduct was evasive or persistently uncooperative, *In re Young*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006), or when the debtor claimed to turn over documents but did not provide supporting evidence that he did so, or withheld records after numerous requests, or failed to explain the failure to comply with the order to produce documents. *Id.* at 615-616 (collecting cases). These cases are distinguishable from those instances in which a discharge was not denied because the records were not available to the debtor through no fault of his or her own. *Id.* In this case, however, as stated earlier, the Court rejects Gardner's proffered explanation that the failure to turn over the timeshare documents was the product of the retention of the records by the receiver or the accountant. Triggs expressly denied the assertion in his testimony. The Court concludes that Gardner's explanation was a contrivance by the Debtor in his attempt to continue the concealment of the assets from his creditors. Therefore, a discharge should be denied based on § 727(a)(4)(D).

### D.    Bankruptcy Code § 727(a)(5)

Denial of a discharge under § 727(a)(5) requires proof that "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." This provision is applicable to any unexplained disappearance or shortage of assets. It does not require a showing of fraudulent intent. *In re Gannon*, 173 B.R. 313 (Bankr. S.D.N.Y. 1994). A prima facie case under this section requires the plaintiff to produce evidence of the

disappearance of substantial assets. *In re Cacioli*, 463 F.3d 229, 238 (2d Cir. 2006). Once this burden has been met, the Debtor must explain the whereabouts of the assets and as long as such explanation is convincing and not rebutted, no documentary corroboration is needed. *Id.* The court in *Gannon* characterized this burden as requiring the defendant to satisfy the court that his conduct was business like and in good faith with respect to the assets. *In re Gannon*, 173 B.R. at *317* (citing *In re Wolfson*, 139 B.R. 279, 288 (Bankr. S.D.N.Y. 1992)). In *First American Bank of New York v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 33 (Bankr.E.D.N.Y.1994), the court stated that for purposes of § 727(a)(5), a debtor's explanation of what happened to assets "does not require that the explanation itself be meritorious or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account of the disposition." The court describes "satisfactorily" as giving the court an explanation that the court can believe. *Id.*

In this case, the Trustee alleges that the difference in value of the jewelry listed in the schedules from the amount received when the jewelry was sold at auction establishes the disappearance of assets justifying the denial of a discharge in the absence of Gardner providing an explanation that "satisfactorily account[s] of the disposition" of the jewelry. The Trustee offered no evidence of this diminution in value other than the scheduled value and the amount received at auction. There was no third party valuation of the jewelry to support the original value listed on the schedules. The Trustee without explicitly saying so would like the Court to infer Gardner switched less valuable jewelry for the actual jewelry before turning it over to the Trustee for sale. This may well in fact be what occurred, but the Court is unable to make this factual finding based on the record before the Court. Therefore, the Court concludes that the Trustee has failed to establish that a discharge should be denied based on § 727(a)(5).

### E.      Bankruptcy Code § 727(a)(6)

The Trustee seeks to amend the pleadings to conform to the proof to add a claim that

Debtor should be denied a discharge under § 727(a)(6) as well.  Bankruptcy Rule 7015 allows

the Court to order the pleadings amended to conform to the evidence when the issues are tried

with the express or implied consent of the parties.  Consent by the non-moving party has been

found in instances where evidence of an issue has been introduced at trial with no objection.

*European American Bank v. Launzel-Pennes (In re Launzel-Pennes)*, 191 B.R. 6, 11 (Bankr.

E.D.N.Y. 1996).  Bankruptcy Rule 7015 allows this amendment to the pleadings at any time

even after judgment.  Express consent of parties to conform the pleadings to the evidence is

found when the additional issue is included in the pretrial order.  6A CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1493 (2d ed.

1990).  In addition, a party who allows the introduction of evidence on issues beyond the

pleadings without objection is also deemed to have consented.  *Id.*  In this case, the underlying

facts that the Trustee relies on were included in the Pretrial Order (ECF Doc. # 9).  Additionally,

the Debtor's counsel failed to object to the issue at trial.  (ECF Doc. # 13 at 12.)  Therefore the

court finds that there was sufficient express consent to the amendment of the pleadings to assert

this as an additional ground for denying a discharge.

Bankruptcy Code § 727(a)(6)(A) states:

(a) The Court shall grant the debtor a discharge, unless− . . .

(6) the debtor has refused, in the case−

      (A) to obey any lawful order of the court, other than an order to respond to a material
question or to testify;

*See In re Beeber*, 239 B.R. 13, 29 (Bankr. E.D.N.Y. 1999).  A debtor that refuses to obey a court

order will be denied a discharge.  The ultimate burden of persuasion is on the objecting party but

the burden of production will shift once the objecting party has shown a violation of a court order. *Id.* at 30. However, the denial of a discharge under § 727(a)(6) requires that the debtor willfully and intentionally refused to obey a court order. *In re Matos*, 2008 WL 596744, *2 (11th Cir. March 6, 2008). Thus, a mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient; the party seeking revocation must demonstrate some degree of volition or willfulness on the part of the debtor. *Id.* The debtor then must put forward evidence that "he or she has not committed the objectionable act." *Id.* (citing *Connelly v. Michael*, 424 F.2d 387 (5th Cir.1970)).

The Trustee alleges that the Debtor failed to comply with the order contained in the Memorandum Decision entered by Judge Gropper when the case was converted from a chapter 11 to chapter 7. The Debtor was required within 15 days to file a schedule of unpaid debts incurred after the commencement of the chapter 11 case and to file a final report within 30 days of the entry of the order. (Case No. 02-43420, ECF Doc. # 12 at 14.) In the pretrial order the Debtor's failure to do these things was listed as an undisputed fact. (ECF Doc. # 9 at ¶ 18.) In addition, when questioned at trial about why this was not done the Debtor stated that it was an oversight. (ECF Doc. # 13 at 137.) This Court interprets that statement to be one claiming inadvertence. The Trustee has not produced any additional evidence to refute this claim of inadvertence and provide evidence that the lack of action was an intentional refusal to comply with the court's order. As a result, while it is a very close question, the Court concludes that the Trustee has not met his ultimate burden of persuasion under this section. Therefore, a discharge will not be denied based on § 727(a)(6).

## CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor's discharge is denied

pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(4), and § 727(a)(5).

**IT IS SO ORDERED.**

DATED:      April 1, 2008
                New York, New York

                        **/s/Martin Glenn**
                        MARTIN GLENN
            United States Bankruptcy Judge